76372. BLACK & WHITE CONSTRUCTION COMPANY, INC.
et al. v. BOLDEN CONTRACTORS, INC.
(371 SE2d 421)

SOGNIER, Judge.

Black and White Construction Company, Inc. (B & W) brought an action against Bolden Contractors, Inc. (Bolden), its partner in a joint venture to perform masonry work on a construction project for the Miller Brewing Company. The multicount complaint, seeking the release and disbursement of funds held in escrow which had been paid to the joint venture, as well as damages for breach of the joint venture contract, was later amended to seek only an accounting. Bolden's answer and counterclaim sought damages for fraud, breach of fiduciary duty by various actions of B & W, including commingling of joint venture funds with its own monies, and an accounting of the joint venture funds. The first trial ended in a mistrial, after which the trial court, acting sua sponte, entered an order adding several parties to the action, including Masonry Contractors, Inc. (MCI) and the case again proceeded to trial, with Bolden recast as plaintiff, and B & W and MCI as defendants. At the close of the evidence, the trial court ruled that B & W had commingled some of its funds and funds belonging to the joint venture, but that after an audit, B & W had sufficiently accounted for these funds to prevent damages being awarded for the commingling. The remaining issues went to the jury, which returned a verdict in favor of Bolden against B & W and MCI based on fraud, awarding actual damages, punitive damages, attorney fees and litigation expenses. Judgment was entered on this verdict, and following the denial of their motions for a new trial, B & W and MCI appeal.

1. Appellants contend the trial court erred by failing to bifurcate the legal and equitable claims, thereby allowing the jury to hear prejudicial evidence relevant only to the equitable issue of accounting. First, appellants' argument that only legal issues, and not equitable issues, are triable before a jury, is specious; the cases cited by appel-

lants do not stand for this proposition and appellants' reliance on *Beacon Theatres v. Westover*, 359 U. S. 500 (79 SC 948, 3 LE2d 988) (1959) and *Southland Reship v. Flegel*, 534 F2d 639 (5th Cir. 1976) is misplaced. Contrary to appellants' claim, the trial court properly decided the legal issues first, since "where determination of the equitable issues would be conclusive as to the legal issues, the legal issues must be tried first in order to prevent abrogation of the right to a jury trial." *Southland Reship*, supra at 644. See also *Dairy Queen v. Wood*, 369 U. S. 469 (82 SC 894, 8 LE2d 44) (1962).

Second, the question of severance of issues is a matter within the discretion of the trial court. *Lansky v. Goldstein*, 141 Ga. App. 345 (233 SE2d 437) (1977). In such cases, there is no reversible error absent a clear and manifest abuse of that discretion. See *Sollek v. Laseter*, 124 Ga. App. 131, 132 (183 SE2d 86) (1971). We find no such abuse of discretion here.

Finally, appellants do not specify what particular evidence, if any, relating to the accounting issue, was prejudicial to them. " 'It is the duty of the party asserting error to show it by the record. [Cits.] Assertions of evidence in briefs or enumerations of error cannot satisfy this duty. [Cit.]' [Cit.]" *Bellamy v. Edwards*, 181 Ga. App. 887, 892 (7) (354 SE2d 434) (1987). Enumerations "should specifically and definitely set out the error complained of so that this court will not be compelled to grope in ascertaining what the error is. . . ." *Baker v. Metallizing Co.*, 103 Ga. App. 174 (1) (118 SE2d 843) (1961). To warrant reversal, alleged error must be harmful, *Whitehead v. Cogar*, 180 Ga. App. 812, 813 (1) (350 SE2d 821) (1986), and in view of the fact that the evidence presented as to the accounting ultimately persuaded the trial court that B & W had satisfactorily accounted for all monies and that no damages were awardable for commingling, appellants have not demonstrated how any such evidence was sufficiently prejudicial as to require reversal.

2. Appellants next maintain, in several related enumerations of error, that the trial court erred by adding MCI to the action, sua sponte, before the second trial. We note initially that there can be no question that OCGA § 9-11-21 permits the court to add parties on its own initiative, and this may be done at any stage in the proceedings. *Guhl v. Tuggle*, 242 Ga. 412, 413 (249 SE2d 219) (1978). We further reject outright appellants' claim that the addition was improper simply because MCI was added as a defendant in counterclaim since OCGA § 9-11-21 specifically allows the practice complained of. Appellants argue, however, that there are several other reasons why the addition of MCI was improper.

(a) There is no merit in appellants' argument that the equitable claims against MCI were barred by the doctrine of laches. Laches does not consist of mere lapse of time, *Grant v. Fourth Nat. Bank of*

*Columbus,* 229 Ga. 855, 868 (194 SE2d 913) (1972), rendering *Cartin v. Boles,* 155 Ga. App. 248 (270 SE2d 799) (1980), cited by appellants, inapposite. There also must be prejudice or injury to the party sought to be added resulting from that passage of time. See *Clover Realty v. J. L. Todd Auction Co.,* 240 Ga. 124, 126 (239 SE2d 682) (1977); *Grant,* supra. *Aircraft Radio Systems v. Von Schlegell,* 168 Ga. App. 109 (308 SE2d 211) (1983) is distinguished by its facts, since prejudice was clearly demonstrated in that case by the fact that the party sought to be added had died, necessitating joinder of the executrix instead, and substantially impairing the ability of the executrix to defend the action. In addition, the doctrine of laches is purely equitable and is not applicable to claims at law. *Moore v. American Fin. System,* 236 Ga. 610, 611 (3) (225 SE2d 17) (1976). Since the only equitable claim here was one for an accounting, which all parties agreed was necessary, no adverse consequences resulted to MCI from the accounting, and appellants have shown no prejudice resulting to MCI from its addition as a party. The trial court properly refused to apply the doctrine of laches.

(b) Appellants next argue that the addition of MCI as a party was improper because the claims against it were barred by the statute of limitations. We do not agree. OCGA § 9-11-15 (c) provides that "[w]henever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth . . . in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back to the date of the original pleadings if the foregoing provisions are satisfied, and if within the period provided by law for commencing the action against him the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him."

Regardless of which statutes of limitation are applicable here, we find that all requirements of OCGA § 9-11-15 (c) are satisfied. It is clear that the claims against MCI arose out of the same transaction or series of transactions as those asserted in the original suit, and our focus must therefore be on the second portion of the statute. The deposition testimony of Robert Arch Hamilton, the president of MCI, established such a commonality of interest between MCI and B & W that it would be difficult to maintain that MCI did not receive notice of the institution of the original action. Hamilton testified that in addition to having been the president and owner of 42 percent of the stock in MCI, he was also the vice president of B & W, owned one-third of 70 percent of the stock in B & W, and was in on the forma-

tion of B & W. He further testified that William Amason, who had been president of B & W, had been the secretary and treasurer of MCI, had owned 42 percent of the stock in MCI, and that B & W and MCI had the same officers and directors. Finally, since B & W had, unbeknownst to appellee, assigned a portion of its duties under the joint venture contract to MCI, MCI, being aware both of appellee's claims against B & W and the provisions of both the joint venture contract and its own contract with B & W, should have known that appellee's claims were properly directed against it. Since no claim is made that the statute had run before the commencement of the original action, in which claims were asserted against B & W, and all the requirements of OCGA § 9-11-15 (c) were satisfied, the claims against MCI related back to the time of filing the original claims.

(c) Appellants claim appellee lacked standing to assert any claims against MCI, since it was the joint venture, and not appellee, which was the beneficiary of the contract between B & W and MCI. However, the explicit terms of the agreement between B & W and MCI belie this argument. Paragraph (1) of the agreement between B & W and MCI states explicitly and clearly that "[MCI] agrees to assume full responsibility for the undertaking and completion of the obligations of B & W in the Joint Venture Agreement . . . relating to preparation of tax returns, tax forms, payroll tax deposits or requirements, and record keeping." Thus, MCI stood in B & W's shoes with regard to B & W's obligations to appellee under the joint venture contract. Moreover, Paragraph (2) of that agreement lends further support to appellee's claim that it is a third-party beneficiary of the contract between B & W and MCI since it provides that MCI "agrees to indemnify and hold harmless *B & W* and *Bolden Contractors, Inc.* [appellee], as joint venturers, their officers, agents and employees from any and all liability which may arise as a result of the failure to prepare or file any necessary returns or forms, or make any necessary deposits." (Emphasis supplied.)

Accordingly, we find no error in the trial court's addition of MCI as a party.

3. The record does not support appellants' claim that failure to require the jury to elect between the contract theory of recovery and that based on tort amounted to an impermissible double recovery. The verdict form clearly demanded that the jury indicate upon which theory they based any verdict for appellee, and the jury clearly indicated that it based its award on the tort theory of fraud. Further, the trial court specifically instructed the jury that if it found for appellee, it would need to indicate the *one* theory, out of several presented, upon which they based their award. We find no error here.

4. We do not agree with appellants' contention that because the trial court found there were no damages resulting from any commin-

gling of funds, no damages could be awarded for breach of fiduciary duty amounting to fraud. The record does not support appellants' argument that the entire gist of appellee's claim against them for breach of fiduciary duty rested on the commingling claim. Rather, the record contains ample evidence of other acts which, if believed by the jury, could have constituted a breach of fiduciary duty amounting to actual fraud.

5. The remainder of appellants' thirteen enumerations allege error in the charges of the trial court to the jury.

(a) Several portions of the trial court's charge contained references to improper profits that appellants may have made. At the charge conference, the parties and the trial judge agreed that a modifying charge was necessary to indicate it was not suggested that *all* profits were improper, but only those which were *secret* profits. The court indicated the language it would use, counsel for appellants assented, and the agreed upon modifying charge was given. Although appellants argue that because reference is made to "profits" numerous times in the charge, the modifying charge should have been given an equal number of times, considering the general cautionary instruction in the charge that the jury was not to interpret any repetition as placing greater weight on the portions repeated, and viewing the charge as a whole, see *Robert & Co. Assoc. v. Tigner*, 180 Ga. App. 836, 841 (351 SE2d 82) (1986), we do not find error in the trial court's failure to repeat the modifying charge.

(b) Appellants contend the trial court erred by charging the jury that "breach of a fiduciary duty owed by one party to another constitutes actual fraud," because breach of a fiduciary duty can amount only to constructive fraud, whereas actual fraud requires moral guilt. While it is true that constructive fraud is insufficient to support damages based on fraud, *Windjammer Assoc. v. Hodge*, 246 Ga. 85, 86 (269 SE2d 1) (1980), it is not true, as appellants contend, that breach of fiduciary duty may never be actual fraud. Rather, breach of fiduciary duty may be either innocent or intentional, and the latter will be sufficient to constitute actual fraud. See, e.g., *Sutlive v. Hackney*, 164 Ga. App. 740, 741-742 (297 SE2d 515) (1982); *Scott v. Lumpkin*, 153 Ga. App. 17, 19 (264 SE2d 514) (1980). Thus, in the case sub judice, where breach of fiduciary duty was alleged by appellee to have been intentional, that issue was a question for the jury to decide.

In analyzing appellants' contention, we must again view the charge as a whole. *Robert & Co. Assoc.,* supra. The trial judge properly instructed the jury concerning the difference between actual and constructive fraud, and that actual fraud implies moral guilt while constructive fraud may be consistent with innocence. He further charged the jury explicitly that "[i]n order for you to return a verdict on the basis of fraud in favor of [appellee] . . . against either

[B & W] or [MCI] or both, *you must find moral guilt on the part of that party.* That is, you must find by a preponderance of the evidence that [B & W] or [MCI] acted with the intent to deceive or defraud [appellee]. Intentional breach of a fiduciary duty imports moral guilt." (Emphasis supplied.) Thus, the charge as a whole left no doubt in the minds of the jury that they must find an *intentional* breach of fiduciary duty in order to award damages for fraud. " 'We will not impute . . . an inability to the jury to follow the plain and unambiguous instructions of the judge. . . . A charge that is sufficiently clear to be understood by jurors of ordinary capacity and understanding is all that is required.' [Cit.]" *Gen. Warranty Corp. &c. v. Cameron-Hogan,* 182 Ga. App. 434, 438 (7) (356 SE2d 83) (1987).

*Judgment affirmed. Deen, P. J, and Carley, J., concur.*

DECIDED JUNE 13, 1988 —
REHEARING DENIED JULY 12, 1988.

*Peter A. Wade, Mahlon C. Rhaney, Jr., Gary P. Bunch, Lauren L. Becker,* for appellants.
*Jack H. Senterfitt,* for appellee.