## GROOVER, STUBBS & COMPANY *v.* BROWN.

1. A widow, who was an applicant for a homestead under the provisions of the act of 1870 (Code of 1873, § 2014), which authorized the applicant, in cases where the property was worth more than $2,000, to pay the excess and have the whole property set apart as a homestead, and who exercised the option to pay the excess, secured thereby an interest in the property by such payment, which, though to be treated as a part of the homestead estate during its continuance, reverted to the estate of the widow at the termination of the homestead, and not to the estate of her husband.
2. A judgment setting apart a year's support can not be collaterally attacked on the ground that the widow had also a homestead set apart out of the property of her deceased husband's estate.

Argued July 13, — Decided August 12, 1903.

Levy and claim.　Before A. F. Daley, judge pro hac vice. Washington superior court.　September 10, 1902.

*G. T. & J. F. Cann* and *Hardwick & Hyman*, for plaintiffs.
*Rawlings & Howard* and *Rosser & Brandon*, contra.

Совв, J.　. Groover, Stubbs & Company recovered judgment against the legal representatives of the estate of W. G. Brown in 1878, upon a debt created by the intestate after 1868.　See *Groover, Stubbs & Company* v. *Brown*, 69 *Ga.* 60.　W. G. Brown died in 1870.　His widow applied for a homestead in realty under the constitution of 1868.　. The application stated that the value of the house and lot out of which the homestead was sought was

$2,850, and this was the valuation placed upon it by the surveyor and appraisers appointed to value the same. The widow also applied for a year's support, and the sum of $1,500 was set apart for that purpose under a " judgment duly entered against the intestate estate for said sum, the said year's support being duly set apart according to law on the 5th day of April, 1872." On the day just named the homestead was also set apart, the whole property being embraced in the homestead, and the excess of $850 being paid by the applicant to the administrator of her husband's estate, by an entry by the applicant of a credit for this sum upon her judgment for a year's support, and the administrator receipting her therefor. The widow and one of the minor beneficiaries having died, and the other having arrived at age in 1902, a levy was made upon the entire property which had been set apart as a homestead, under an execution issued on the judgment above referred to. R. M. Brown, the beneficiary of the homestead, who had arrived at full age, and who was the sole heir of his mother, interposed a claim to an undivided 850/2850 or 17/57 interest in the property levied on. A judgment was rendered in favor of the claimant, and to this judgment the plaintiffs in execution excepted.

The homestead was set apart under the provisions of the Code of 1873, § 2014, which provided that when the applicant sought to have set apart a homestead out of town property exceeding in value $2,000, the applicant should have the option to pay, within a given time from the date of the valuation, the difference between the valuation and $2,000; it being declared that " said excess of value contained in such property shall be governed in all respects by the homestead and exemption laws now of force, and shall be thereafter as fully exempt from levy and sale as if the husband or other head of a family had made a bona fide and legal settlement of the same on the wife and minor children, or either, for their use, benefit, or maintenance, which shall thereafter stand as property exempt by law from levy and sale, distinct from that permitted by the constitution." While it is not material to this discussion, it may be remarked that the provision of law just quoted is no longer of force, having been repealed in 1876. See Acts 1876, p. 49, sec. 4. If the applicant for the homestead was the head of a family and the owner of the property, there would be no difficulty in determining what would be the legal status of the excess at the ter-

mination of the homestead estate.   It would, like the reversion of the homestead, return to the estate of the head of the family.   In this case, though, the applicant was the widow of the head of the family, and the payment of the excess came from her own property, and not from the property of her husband's estate.   This raises an entirely different question.   Except for this provision of the law the property would have been sold, $2,000 being set apart as a homestead, and the remainder ($850) being distributed among the creditors and heirs of the intestate.   When the widow out of her own funds paid to the legal representatives of the estate the $850, it is to be presumed that it was distributed as the law required and paid out to creditors and heirs.   Such being the case, so far as creditors and heirs are concerned, the status is the same as if the property had been sold at the time the application for the homestead was made.   In other words, the legal effect of the transaction is that the widow, by the payment of the $850, became the owner of an interest in the property represented by that amount.   But the payment under the circumstances would require that she should permit her interest to be treated as a part of the homestead until the termination of that estate.   After the termination of the estate, however, when the reversion in the homestead returned to the estate of the head of the family, the reversion in the interest which the widow purchased would return to the estate of the widow, its owner.

It is said, though, that the widow did not pay the $850, but that she simply credited this amount on the year's-support judgment, and that she was not entitled to a year's support, for the reason that a widow can not take out of the estate of her deceased husband both a homestead and a year's support.   But there is a judgment setting apart a homestead and a judgment setting apart a year's support.   If the widow was seeking to have set apart both a homestead and a year's support when she was entitled to only one, objection on this ground should have been urged either to the application for the homestead or to the application for the year's support.   When the parties interested in the estate allowed both judgments to be entered, and did not except thereto, the judgments became, as all other judgments, conclusive, and not subject to collateral attack upon any ground which could have been set up as a defense before the judgment was rendered.   It may be that the widow was not entitled to a year's support, but the judgment

setting it apart has stood for thirty years, and, if subject to attack at all after such a lapse of time, it can not be collaterally attacked. It was said in the argument that the record did not show that the judgment setting apart the year's support was regular.      The language of the agreed statement of facts quoted above indicates sufficiently that it was the intention of the parties to agree, for the purposes of this case, that the judgment setting apart the year's support was a valid and binding judgment.      We find no reason for reversing the judgment.      *Judgment affirmed.      By five Justices.*