S13A0488. ANSLEY v. RACZKA-LONG.
(744 SE2d 55)

HUNSTEIN, Chief Justice.

This quiet title action involves a dispute over the ownership of two lots in Americus, Georgia, between Annemarie Raczka-Long, the holder of record title, and Rose H. Ansley, the holder of two promissory notes who claims title based on an implied trust. Raczka-Long filed a motion for summary judgment based on her legal title to the property. Granting the motion, the trial court concluded that Ansley failed to show that the promissory notes she held were intended to create a resulting trust or to secure any interest in the property. Because there is a disputed issue of material fact concerning whether a constructive trust was created, we reverse the trial court's grant of summary judgment.

In September 2010, Ansley conveyed fee simple title to the two lots known as 149 and 151 Pearl Drive by warranty deed to Andrew

Charles Long, who was separated at the time from Raczka-Long. In exchange, Ansley received two promissory notes. The note concerning 149 Pearl Drive stated that Long owed Ansley $15,000 for the lot and provided for 60 monthly payments of $250 beginning on November 1, 2010. The note concerning 151 Pearl Drive, on which a house largely financed by Ansley was being constructed, stated that Steve Harrell owed Ansley $250,000. Long recorded the warranty deeds in Sumter County, but did not execute any security deed pledging the property as collateral or pay Ansley any money for the properties. On December 31, 2010, Long signed a contract with a real estate agent to list 149 Pearl Drive for sale. He died eight days later. Soon after his death, his girlfriend Tami Warren signed his name to quitclaim deeds conveying 149 and 151 Pearl Drive back to Ansley. Ansley recorded both quitclaim deeds on March 1, 2011.

On March 11, 2011, Raczka-Long filed a petition for year's support in the Lee County Probate Court seeking an award of the properties at 149 and 151 Pearl Drive. Ansley was not included in the notice of interested persons, and she did not appear to contest the petition. On April 14, 2011, the probate court awarded Raczka-Long title to both lots as year's support.

On March 17, 2012, the administrator of Long's estate filed a Petition for Quia Timet to Cancel a Fraudulent Deed against Ansley in Sumter County Superior Court. See OCGA § 23-3-40. The complaint alleged the quitclaim deeds that Ansley had recorded were forged and sought to cancel them as a cloud on Raczka-Long's title. In response, Ansley denied any knowledge that the quitclaim deeds were forged and filed a counterclaim alleging unjust enrichment based on Long's failure to pay her any money for the lots. Raczka-Long was substituted as the petitioner and moved for summary judgment, asserting the quitclaim deeds were forged, record title was vested in her husband at the time of his death, and the probate court had awarded her title to the properties as year's support. Opposing the motion, Ansley asserted that there were disputed issues of material fact concerning whether a resulting or constructive trust existed based on Long's agreement to pay for the properties or deed them back to Ansley if he was unable to obtain financing. The trial court found that Ansley relied on the promissory notes for the passing of title to the property and "has failed to show that these Promissory Notes were intended to create a resulting trust or secure any interest upon the property or that this alleged trust should take precedence over the award of the year's support." Ansley appeals.

1. An award of year's support does not adjudicate title to property. *Stephens v. Carter*, 215 Ga. 355 (3) (110 SE2d 762) (1959). The effect of a year's support award is to vest in the widow whatever legal or

equitable interest that her husband had in the property at the time of his death. Id. at 359. When property distributed as part of the husband's estate does not in fact constitute a part of his estate, then the judgment of the probate court in awarding year's support in that property will be void. See *Johnson v. City of Blackshear*, 196 Ga. 652 (2) (27 SE2d 316) (1943). In this case, whether the superior court correctly concluded that the probate court's award of title to Raczka-Long as year's support took priority over the implied trust alleged by Ansley depends on the validity of Long's title in 149 and 151 Pearl Drive at the time of his death.

2. A party is entitled to summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). On appeal from the grant of summary judgment, we construe the evidence most favorably toward the nonmoving party, who is given the benefit of all reasonable doubts and possible inferences. *Smith v. Georgia Kaolin Co.*, 264 Ga. 755 (3) (449 SE2d 85) (1994). The party opposing summary judgment is not required to produce evidence demanding judgment for it, but is only required to present evidence that raises a genuine issue of material fact. *Walker v. Sapelo Island Heritage Auth.*, 285 Ga. 194 (2) (674 SE2d 925) (2009).

In opposing the motion for summary judgment, Ansley presented affidavits explaining the terms of the agreement she had with Long and their intention to impose a resulting or constructive trust. In 2010, Ansley began working with Milton Terry, the owner of a construction company, Steve Harrell, the company's project manager, and Long, the company's superintendent, to develop the properties she owned at 149 and 151 Pearl Drive. According to their affidavits, Ansley, Terry, and Harrell planned to build and sell houses on both lots and then expand the development to build houses on surrounding lots. Long approached the three about purchasing 149 Pearl Drive and building a house on it. He stated that he was divorced and had assets, but needed additional assets to secure a construction loan from the bank. Ansley, Harrell, and Verlin Jones, the attorney who prepared the warranty deeds and promissory notes, aver that Long owed Ansley $15,000 for the lot at 149 Pearl Drive and Harrell owed $250,000 for the lot and house under construction at 151 Pearl Drive. Ansley contributed the lot and approximately $170,000 to the construction project, Terry contributed approximately $60,000 in labor, and Harrell contributed approximately $35,000. Ansley, Terry, Harrell, Jones, and Warren further aver that Ansley deeded the two lots to Long "solely for the purpose of aiding him in obtain[ing] financing" subject to certain conditions. If Long obtained the necessary financing, he would pay for the lot at 149 Pearl Drive and deed the lot at 151

Pearl Drive back to Ansley; if Long was unable to obtain financing, he would deed both lots back to her. Ansley and Harrell also aver that shortly before his death Long told each of them that he intended to deed the properties back to Ansley, although other evidence shows that he was trying to sell 149 Pearl Drive at that time. Ansley denies knowing about the forgery of the quitclaim deeds by Long's girlfriend; Warren states that she signed Long's name because he had said the lots belonged to Ansley and he needed to deed them back to her.

An implied trust is defined as either a resulting trust or a constructive trust. See OCGA § 53-12-2 (5); *Hancock v. Hancock*, 205 Ga. 684 (1) (54 SE2d 385) (1949). Under the Revised Georgia Trust Code of 2010, a resulting trust "is a trust implied for the benefit of the settlor or the settlor's successors in interest when it is determined that the settlor did not intend that the holder of the legal title to the trust property also should have the beneficial interest in the property." OCGA § 53-12-130. "An implied resulting trust can arise under three circumstances: (1) an express [or implied] trust is created but fails for any reason; (2) a trust is fully performed without exhausting all the trust property; and (3) a purchase money resulting trust is established." *Edwards v. Edwards*, 267 Ga. 780, 781 (1) (482 SE2d 701) (1997) (applying 1991 Trust Act); see OCGA § 53-12-131 (defining a purchase money resulting trust). Construing the facts in the light most favorable to Ansley as the party opposing summary judgment, we conclude that the trial court correctly determined that she has failed to allege disputed issues of material facts showing an intention to create an implied resulting trust in her favor under the statute.

3. A constructive trust "is a trust implied whenever the circumstances are such that the person holding legal title to property, either from fraud or otherwise, cannot enjoy the beneficial interest in the property without violating some established principle of equity." OCGA § 53-12-132. "Equity will not allow one with a legal interest in a piece of property a windfall recovery when the beneficial interest should flow to another." *Weekes v. Gay*, 243 Ga. 784, 787 (3) (256 SE2d 901) (1979). A "constructive trust is a remedy created by a court in equity to prevent unjust enrichment." *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 138 (2) (508 SE2d 646) (1998).

In this case, Ansley claims unjust enrichment because Long did not pay any money for the property at closing or through monthly payments. Again construing the evidence in the light most favorable to Ansley, we conclude that she has raised disputed questions of material fact concerning whether Long had agreed to deed back the properties to Ansley and whether he intended to do so after he failed to obtain financing. Therefore, the trial court erred in deciding as a

matter of law that a constructive trust should not be implied under the circumstances. See *Edwards*, 267 Ga. at 781-782 (reversing grant of summary judgment when evidence raised a disputed issue of material fact concerning whether a constructive trust should be implied); *Conner v. Conner*, 250 Ga. 27 (2) (295 SE2d 739) (1982) (reversing grant of motion to dismiss, finding evidence sufficient to make a jury issue as to whether an implied trust was created); *Whiten v. Murray*, 267 Ga. App. 417 (2) (599 SE2d 346) (2004) (concluding an implied trust existed in favor of party who had beneficial interest based on paying the mortgage and taxes). Accordingly, we reverse the trial court's grant of summary judgment to Raczka-Long based on the implied constructive trust claim.

*Judgment affirmed in part and reversed in part. All the Justices concur.*

DECIDED JUNE 3, 2013.

*W. Edward Meeks, Jr.*, for appellant.
*Hall, Williamson & Hart, Alexander H. Hart*, for appellee.